IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Raymond L. Habeck, Jr., ) | |
| ) | Civil Action No. 8:04-1844-CMC-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff previously filed applications for disability insurance benefits (DIB) in 1991, for DIB and SSI in 1995, and for SSI in 1999. All of these applications were denied, and the adverse determinations on all three claims are administratively final.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed his current application for SSI on October 20, 2000, alleging that he became unable to work on December 31, 1998. The application was denied initially and on reconsideration by the Social Security Administration. On November 26, 2001, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, his attorney, and a vocational expert appeared, considered the case *de novo*, and on August 25, 2003, found that the plaintiff was not entitled to benefits. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on April 12, 2004. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (2) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
>
> (3) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (4) The undersigned finds the claimant's allegations regarding his limitations are not credible for the reasons set forth in the body of the decision.
>
> (5) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).
>
> (6) The claimant has the following residual functional capacity: he is able to perform a reduced range of light exertion work with the limitations described above.
>
> (7) The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

    (8)    The claimant is a younger individual between the ages of 45 and 49" (20 CFR § 416.963).

    (9)    The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).

    (10)    The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

    (11)    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

    (12)    Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs and their numbers are listed above.

    (13)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389

(1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff alleges that (1) the ALJ erred in not giving controlling weight to the opinion of his treating physician, and (2) the ALJ's residual functional capacity determination is not supported by substantial evidence.

The plaintiff, 49 years old at the time of the ALJ's decision, alleges disability based upon diabetes, and leg and back pain. A high school graduate, he had prior relevant work experience as a siding installer and an auto mechanic (Tr. 66, 72, 91, 95). His alleged date of onset was December 31, 1998.

The plaintiff was first seen by Dr. George J. Neff in February 1999 for back pain. The treatment notes indicate that the plaintiff had diabetes which was uncontrolled and that he had not checked his blood sugar in some time. It was noted that he had vision

problems as a result of his diabetes. Dr. Neff diagnosed lumbosacral strain and uncontrolled diabetes and prescribed insulin and pain medication, along with a diet. Dr. Neff noted that the treatment plan was conservative because the plaintiff did not have insurance (Tr. 111). Follow-up notes indicate that the plaintiff continued to be treated for back pain and uncontrolled diabetes. On August 26, 1999, Dr. Neff indicated that the plaintiff told him he was still working despite having back pain. The plaintiff also reported that he was driving his wife, his son and his daughter to their respective jobs each morning (Tr. 105).

The plaintiff was treated by Dr. Neff in 2000 for back pain, soreness in his arms and legs, and depression. He was also referred to the diabetes management center for education and management of his diabetes (Tr. 101-105).

The plaintiff was first seen by Dr. William Price, an endocrinologist, on October 12, 2000. Dr. Price reported that the plaintiff was working in yard maintenance on a regular basis. Dr. Price started the plaintiff on a new insulin regimen and emphasized the importance of regular monitoring and education (Tr. 125; 130). The records show that by 2001, the plaintiff's diabetes was still uncontrolled and Dr. Price indicated that "[o]btaining good control of his diabetes may be extremely difficult. He is taking an insulin program which is quite obtuse." Dr. Price went on to state "[t]he patient is going to be difficult to work with from the standpoint of his diabetes. He is not monitoring his blood sugars, and I am hesitant to start the patient on any program that does not include regular checks of his blood glucose" (Tr. 121).

On October 3, 2002, the plaintiff was seen by Dr. Mojgan Rahmani, an endocrinologist in the same group as Dr. Price. Dr. Rahmani reported that the plaintiff was not checking his blood sugar regularly, which made insulin adjustments difficult. The plaintiff reported to Dr. Rahmani that he had peripheral neuropathy and was being seen by

Dr. Robert Ringel for that condition. Dr. Rahmani adjusted the plaintiff's insulin and advised him to stop smoking (Tr. 254-255).

The plaintiff was examined by Dr. Lary Korn for a consultative evaluation on January 4, 2001. The plaintiff reported back pain; left sacroiliac pain; knee burning; tingling; numbness and decreased sensation, bilaterally; and insulin dependent diabetes mellitus. He also reported to the examiner that he did "bits of this and that" since he stopped working full-time. He further indicated that he drove an automobile and managed his finances (Tr. 113-14).

Dr. Korn's examination revealed a limp on the left side and a stiff, slightly abnormal gait. The plaintiff exhibited normal mood, communication and comprehension. The diagnosis was chronic low back pain/ sacroiliac pain, possible mild impingement of the shoulders and possible diabetic peripheral neuropathy. Dr. Korn stated: "Low back measurements would be considered invalid due to lack of sacral motion. In light of examinee's stated complaints, he may want to avoid duties that require prolonged or repetitive bending, leaning, stooping or lifting much more than twenty pounds at a time" (Tr. 113-115).

Dr. Robert Ringel, a neurologist, treated the plaintiff for diabetic peripheral neuropathy and sexual dysfunction between June 13, 2001, and January 21, 2003. His initial examination revealed diminished sensation in the plaintiff's arms and legs and absent reflexes. Dr. Ringel indicated that the plaintiff "has clinical features of a significant generalized sensorimotor peripheral neuropathy" and he recommended nerve conduction studies and electromyography (Tr. 291-93). Nerve conduction test results were "consistent with a generalized sensorimotor peripheral polyneuropathy" (Tr. 291-93).

In a statement dated January 15, 2002, Dr. Ringel stated that the plaintiff was unable to work due to diabetic peripheral neuropathy. He also stated that the plaintiff could lift up to 20 pounds occasionally, sit without restriction, reach overhead, perform gross

7

grasping and perform work not requiring prolonged work or repetitive grasping, reaching, or fine hand manipulation (Tr. 169-170). On April 16, 2002, Dr. Ringel sent another statement in which he said:

> [The plaintiff] has a history of a sensorimotor generalized peripheral neuropathy secondary to diabetes mellitus. He has currently been treated with Neurotonin. At times requires the intermittent use of narcotic analgesics, which I have requested him to avoid due to the potential for addiction and I believe restriction of activity will decrease his pain requirement. Repetitive activity, walking, bending, lifting appears to exacerbate his pain from his sensorimotor, predominately small fiber or axonal peripheral neuropathy. The most likely etiology of this is his diabetes mellitus. I do not believe that he will experience any significant improvement in the future and is not capable of gainful employment for a period of 12 months or longer. He should be considered for total and permanent disability.

(Tr. 168). Dr. Ringel also completed a questionnaire on April 17, 2002, in which he indicated that the plaintiff's prognosis was poor. Dr. Ringel noted that the plaintiff has extremity pain and numbness, muscle weakness, vascular disease/leg cramping, difficulty walking, skin infections and fatigue. Dr. Ringel stated that the plaintiff has clinical findings of severe painful peripheral neuropathy. According to Dr. Ringel's report, the plaintiff also has distal stocking glove sensory loss, muscle fatigability, distal limb arreflexia, and pain and cramps. He noted that the plaintiff's symptoms and limitations are reasonably consistent with his impairments. Dr. Ringel opined that the plaintiff cannot sit or stand for more than an hour during a workday and that he can occasionally lift and carry up to 20 pounds. Dr. Ringel also stated that the plaintiff is not a malingerer and he constantly has pain severe enough to interfere with attention and concentration. Dr. Ringel further stated that the plaintiff is likely to have bad days and miss work more than three times a month. He cannot push, pull, kneel, bend or stoop (Tr. 177-182).

The plaintiff was also treated at the Inman Family Practice between January 5, 2001, and November 13, 2002, for back pain, sexual dysfunction and depression (Tr. 140-144; 147-148; 266-267; 274).

On October 29, 2002, the plaintiff was hospitalized for diabetic ketoacidosis. After a two-day stay, during which the plaintiff received insulin and saline for dehydration, the plaintiff was discharged with instructions regarding monitoring of his blood glucose levels (Tr. 185).

Follow-up visits with Dr. Ringel indicate that the plaintiff continued to have neuropathic pain, sensory disturbance and myalgias. His medications included Neurontin, Trileptal and Darvocet (Tr. 287-288).

Dr. Ringel completed another impairment questionnaire in 2004, in which he essentially reiterated his assessment from 2001. He reduced the plaintiff's ability to lift to 10 pounds, however. This assessment was included in the record by the Appeals Council (Tr. 312-317).

***Treating Physician Opinion***

As discussed above, the plaintiff's neurologist, Dr. Ringel, submitted several statements in which he opined that the plaintiff was not capable of working full-time. The ALJ gave Dr. Ringel's opinion no weight, stating:

> Dr. Ringel concluded that the claimant could only sit, stand, or walk for only one hour of an eight hour work day, and that the claimant's pain was severe enough to constantly interfere with attention and concentration, and make him absent from work more than three times per month. However, the claimant's contention of disabling pain has already been negated by his not needing narcotic medication, and the lack of filled prescriptions since 2000. Furthermore, the rather extreme sitting, standing, and walking limitations suggested by Dr. Ringel are negated by the claimant's work activity as a lawn care worker. Therefore, I do not give any weight to the assessment of Dr. Ringel ... because it [sic] credibility. In fact,

9

> I cannot find his allegations of pain credible, since I know his allegations about drug side effects and, indeed, his need for narcotic pain medication, to not be credible.

(Tr. 20-21).

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. Social Security Ruling 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Thus, as a threshold matter, the ALJ is required to determine whether a physician's opinion is "well supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence" in the record and thus entitled to controlling weight.

The ALJ here relied heavily on her judgment that because the plaintiff was not on any narcotic medication, his allegations of pain were not credible and Dr. Ringel's opinion should be given no weight. However, the record shows that Dr. Ringel prescribed Neurotonin, rather than long term narcotics, for the plaintiff's pain because of the potential for addiction. The record clearly reflects that the plaintiff suffers pain and that he will continue to do so in the future. Dr. Ringel, however, stated that under the circumstances, he would not prescribe Oxycontin (Tr. 169). The ALJ's decision to give Dr. Ringel's opinion no weight based upon this issue is simply not supported by substantial evidence in the case. While it is true that the ALJ is charged with the duty to weigh the evidence in a

particular case, she cannot substitute her judgment for the judgment of a medical professional.

The ALJ also found that the plaintiff's work activity as "a lawn care worker" contradicts Dr. Ringel's opinion. However, the evidence in the record on this factual issue is not inconsistent with Dr. Ringel's assessment. The plaintiff testified that he and his father cut three or four yards twice a month, using a riding lawn mower. There was no more testimony on this issue. Dr. Ringel stated that the plaintiff could not sit for more than one hour at a time. This opinion is not contradicted by the limited testimony regarding the plaintiff's yard work.

The record as a whole supports the opinion of Dr. Ringel. He has been the plaintiff's treating neurologist for several years, and has been actively involved in the medical management of the plaintiff's illnesses. It is clear, and the Commissioner does not dispute, that the plaintiff has severe insulin dependent diabetes mellitus and related peripheral neuropathy. EMG and nerve conduction studies were consistent with generalized sensorimotor peripheral polyneuropathy. Dr. Ringel opined in 2002 that this condition would cause "significant distal limb pain, stocking glove sensory loss and muscle fatigue ... [and that] his symptoms are likely to be progressive in quality" (Tr. 169).

Dr. Ringel's opinion was also supported by the reports and notes of other medical professionals who saw and treated the plaintiff. The record as a whole clearly supports the opinion of Dr. Ringel. Therefore, the ALJ erred in failing to give Dr. Ringel's opinion controlling weight.

***Residual Functional Capacity***

The ALJ found that the plaintiff has the residual functional capacity to perform "a significant range of light work" (Tr. 23). The plaintiff argues that this finding was not supported by substantial evidence.

11

Social Security regulations require the ALJ to assess a claimant's residual functional capacity. 20 C.F.R. §416.946(c). Residual functional capacity means "the most [a claimant] can do despite [his] limitations." 20 C.F.R. §404.1545(a)(1). The ALJ can determine the value to give a medical source's opinions according to the factors listed in 20 C.F.R. §404.1527(d). Further, the determination of a claimant's residual functioning capacity lies with the ALJ, not a physician, and is based upon all relevant evidence. 20 C.F.R. §§404.1545(a), 404.1546, 416.945, 416.946.

The ALJ found as follows with regard to the plaintiff's residual functional capacity:

> He cannot repetitively bend to floor level, and he cannot lift more than 20 pounds occasionally or 10 pounds frequently. I also find that he can sit, stand or walk for six hours, each, of an eight hour work day, but he needs a job where he can change positions to relieve discomfort (i.e., freedom to "wiggle"). In reaching this residual functional capacity finding, I note that there is no State Agency assessment of the claimant's physical limitations pertinent to the period at issue in the record to either agree or disagree with, but I adopt the State agency's assessment of the claimant's mental limitations ... which found that he has no "severe" mental impairments.

(Tr. 21).

The ALJ does not refer to any evidence in making her RFC finding, nor does she indicate how she reached that finding. She specifically states that she did not rely on any state agency assessment in making her finding. Substantial evidence does not support the ALJ's RFC finding. As discussed above, the ALJ improperly rejected the treating neurologist's opinion as to the plaintiff's impairments and limitations. Moreover, the ALJ's finding is inconsistent with her finding that the plaintiff's peripheral neuropathy is a severe impairment.

12

## **CONCLUSION AND RECOMMENDATION**

The record does not contain substantial evidence supporting the Commissioner's decision denying coverage under the correct legal standard, and reopening the record for more evidence would serve no purpose. *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Therefore, based upon the foregoing, it is recommended that the Commissioner's decision denying the plaintiff's application be reversed pursuant to sentence four of Title 42, United States Code, Section 405(g) and that the plaintiff be awarded benefits.

s/Bruce H. Hendricks
United States Magistrate Judge

June 28, 2005

Greenville, South Carolina